CITY AND COUNTY OF SAN FRANCISCO v. CENTER
et al.*

S. F. No. 1512; December 10, 1900.

### 63 Pac. 35.

Judgment.—In a Former Action Brought by Defendants Against Plaintiff to quiet title, the judgment quieted title in defendants, with a proviso that nothing in the decree should impair the rights reserved in the Van Ness ordinance to the plaintiff, over lands that had "then been occupied or set apart" for public use. The opinion of the supreme court deciding that case held that all the rights which the plaintiff had, and which could be conveyed by said ordinance, had passed to defendant's grantor at a time shortly after the passage of such ordinance. Held, that the expression "then occupied or set apart," as used in the judgment, had reference to the date of the passage of the ordinance, and not to the date of the commencement of the action to quiet title, or the decree therein.

APPEAL from Superior Court, City and County of San Francisco; Charles W. Slack, Judge.

Action by the city and county of San Francisco against John Center and others. From a judgment in favor of plaintiff and an order denying a new trial defendants Leroy appeal.

Platt & Bayne and E. S. Pillsbury for appellants; James L. Gallagher for respondent.

CHIPMAN, C.—Ejectment. Plaintiff filed its complaint in this action November 29, 1886, to recover possession of a strip of land extending from Ninth to Eighteenth street, in the city and county of San Francisco, and which was formerly Mission creek. Among the defendants, of whom there is a large number, were Eugene and Georges Leroy, who claimed ownership in and possession of a portion of the land in question, to wit, the northerly and westerly half of Mission creek, extending from Eleventh street (known as "Wood Street" on the Van Ness map) westerly and southerly to a point distant about twenty-six feet four and three-fourths inches southerly from the southerly line of Alameda street extended

---

*For subsequent opinion in bank, see 133 Cal. 673, 66 Pac. 83.

westerly through this land. The Leroy land embraces quite a large tract, but only the part within the creek is in question. Judgment was given in favor of plaintiff against the Leroys, except as to a small, four-sided tract of land, about twenty-five feet square, situate at the southwest corner of Alameda and Columbia streets, as to which the Leroys had judgment. From that portion of the judgment in favor of plaintiff the Leroys have appealed, and bring the record here by bill of exceptions. No other defendants appeal.

Plaintiff claimed to be seised in fee in trust for the use of the state and for the people of the city and county of San Francisco, and it based its claim of title upon a patent issued by the United States government June 20, 1884, to plaintiff for its pueblo lands; the decree of the United States circuit court in the case of City of San Francisco v. United States, entered May 18, 1865, confirming the claim of the city to its pueblo lands; and the act of Congress approved March 8, 1886, also confirming said claim. The decree and the act of Congress are printed in full in 138 U. S. 663, and Municipal Reports San Francisco, 1886–87, Append. 155. The Leroys claimed under decree of the circuit court of the United States, quieting their title against the city and county, and adjudging that they were on, and have been since, October 26, 1883, the owners in fee of the land now claimed by them. On appeal to the supreme court of the United States this decree was affirmed (City and County of San Francisco v. Leroy, 138 U. S. 656, 34 L. Ed. 1096, 11 Sup. Ct. Rep. 364), with the following modification, as shown by the certified copy of the decree: ". . . . By adding the declaration that nothing therein shall be deemed to impair in any respect the rights reserved in the Van Ness ordinance to the city of San Francisco, or its successor, the city and county of San Francisco, over lands that had then been occupied or set apart for streets, squares, and public buildings of the city, and as thus modified be affirmed." This decree is dated March 2, 1891, and was filed in the United States circuit court at San Francisco December 1, 1891.

Appellants first devote much attention to the proposition that the burden of proof was upon plaintiff to show that there were rights reserved to it under the Van Ness ordinance that would be impaired by the decree pleaded by appellants; they claim, second, that, if the burden was upon defendants,

then they, with the assistance of plaintiff, made the proof; and, third and lastly, if any rights in the land covered by Channel street and Mission creek were reserved to the city under the Van Ness ordinance, these rights ceased to exist, because this street and the creek were abandoned by the city.

It becomes necessary to determine at the outset to what period of time the modification of the Leroy decree by the United States supreme court related. Plaintiff contends that it had reference to the date of the decree as entered in the United States circuit court, which was June 14, 1887. Defendants claim that the modification had reference to the situation as it existed when the Van Ness map was made, showing the reservations then made by the city for streets, etc., under the Van Ness ordinance. The importance of the question lies in the fact that there were other maps made and adopted by the city, subsequent to the Van Ness map, which show that reservations additional to those indicated by that map were made before the decree was entered in favor of the Leroys, and which changed the relation of certain streets to Mission creek, and changed somewhat, apparently, the course and width of Channel street. The opinion of the supreme court was written by Mr. Justice Field, and to this opinion we may look to aid us in arriving at the meaning of the formal decree as subsequently entered by the clerk of the court. It appears from the opinion that in the action brought by the Leroys they deraigned title through William J. Shaw, who derived title through Kissling, Thorne and Center, and one Stewart, whose several titles the court held had been fully established under the Van Ness ordinance, running back to a date contemporaneous with that ordinance; that "the title to the lands thus claimed by Kissling and by Thorne and Center, and by Stewart as a purchaser from them of four and a half acres, became, by operation of that ordinance and the confirmatory legislation mentioned, vested in those parties, and by their conveyance passed to William J. Shaw, and was by him conveyed to Eugene L. Sullivan, and thence to the plaintiffs [Leroys] in this suit." The opinion further reads: "All the right, title and interest which the city held, and which could be conveyed under the Van Ness ordinance, had, therefore, passed to Shaw when the suit to quiet his title was commenced and carried to judgment in the district court of the twelfth judicial district of the state, and what-

ever benefit Shaw had acquired by that decree in his favor inured to the benefit of his grantees, the public rights reserved by the Van Ness ordinance being necessarily excepted.'' The suit here referred to was begun by Shaw on March 28, 1861, and a decree was entered in his favor February 5, 1862, from which no appeal was ever taken. The opinion proceeds: ''One of these [i. e., ''public rights''] was a reservation, notwithstanding its grant, of lands then occupied or set apart for public squares, streets and sites for schoolhouses, city hall and other buildings belonging to the corporation; and the decree in this case should have excepted from its operation lands thus reserved.'' After discussing the claim of Shaw in the suit above referred to, arising from a deed to him of the tide land commissioners, the opinion continues: ''There was therefore nothing in the deed of the tide land commissioners which could by any possibility impair the right of the city to exercise the power reserved in the Van Ness ordinance over such portions of the lands conveyed to occupants under that ordinance as had been occupied or set apart for streets, squares and public buildings of the city. Such a reservation should have been embodied in the decree in this case.'' The opinion concludes as follows: ''The decree should therefore be modified by adding the declaration that nothing therein shall be deemed to impair in any respect the rights reserved in the Van Ness ordinance to the city of San Francisco or its successor, the city and county of San Francisco, over lands that had then been occupied or set apart for streets, squares and public buildings of the city, and as thus modified be affirmed; and it is so ordered.'' We have quoted in an earlier part of this opinion the language of the decree as modified, which modification is identical with that in the concluding paragraph of the opinion of Judge Field. Having in view the facts stated by Judge Field relative to the Shaw title, which is the origin of the Leroy title, it seems quite clear to us that the modification of the Leroy decree relating to the reserved rights of the city had reference to those rights as they existed at a date certainly no later than the Van Ness map, which set forth the reservations then claimed by the city under the Van Ness ordinance. In making subsequent maps and passing subsequent ordinances the city could not destroy any rights that had attached in favor of settlers or occupants of land confirmed to them by the

Van Ness ordinance and by the acts of the legislature ratifying the action taken by the city under that ordinance.

The Leroys brought their action to quiet their title October 26, 1883, and it was still pending on appeal to the supreme court and undecided when, on November 29, 1886, the city brought this present action. If the Leroy decree had not been modified it would have been conclusively determinative of the rights of the Leroys to at least some portion of the disputed land; and being modified in the particular already noticed, and being in all other respects affirmed, the only question is as to what, if any, reservations of the land in controversy did the city make by the Van Ness map. The other maps introduced in evidence—the engineer's map, so called (adopted 1866), and the Humphreys map (adopted 1870)— are of dates subsequent to the Van Ness map, and subsequent to the inception of Shaw's title, as we understand the facts in the Leroy suit against the city. The Van Ness map must therefore govern in determining what reservations were made by the city that in any way conflict with the Leroy lands. The subsequent maps and ordinances may possibly throw some light on the Van Ness map, and aid in arriving at its meaning; but they cannot take the place of that map in the sense that by them, and not by the Van Ness map, are the rights of the present parties to be determined. The trial court evidently took into consideration not only the Van Ness map, but also the engineer's map and the Humphreys map (which latter, it is agreed, is identical with the engineer's map so far as the land in controversy is concerned), and also other facts, such as that the city had fenced the lands it now claims; that Mission creek had been filled by the city; and other facts occurring since the Van Ness ordinance was passed, and that appeared in evidence. It is also manifest that the trial court regarded the modification of the Leroy decree as relating to its date or to the beginning of their action, and that the findings of the court were more or less influenced by these later maps, and by evidence as to reservations made by the city in some degree, at least, different from those indicated by the Van Ness map. The location of Mission creek with reference to Channel, Alameda and Columbia streets is different on the Van Ness map from its location on the Humphreys map. On the Van Ness map Mission creek is shown to run west of Columbia street, while

on the Humphreys map the creek and that street are nearly coincident at and north of Alameda street for some distance. Channel street on the Humphreys map seems to occupy a different relation to the other streets named and to Mission creek from the Channel street delineated on the Van Ness map. Whether or not the city should be concluded by the Van Ness map as to the exact location thereon given of Mission creek, we at this time express no opinion. Under the view we have taken, however, as to the modification of the Leroy decree, we do not think this court should, in the present state of the evidence in this case, undertake to point out the respective rights of the plaintiff and appellants to any particular lands in controversy, or to pass upon any other questions now before the court. The judgment and order should be reversed, and a new trial ordered as to appellants, to be had upon the evidence already taken and such other evidence as plaintiff or appellants, or either of them, may wish to offer, and as to all other defendants the judgment should be affirmed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed and a new trial ordered as to appellants, to be had upon the evidence already taken and such other evidence as plaintiff or appellants, or either of them, may wish to offer, and as to all other defendants the judgment is affirmed.